# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:18-cr-00027

UNITED STATES OF AMERICA

v.

BENJAMIN CHARLES SLAUGHTER

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Benjamin Slaughter is charged in an indictment out of this district with (Count 1) sexual exploitation of children, 18 U.S.C. § 2251(a) and (e); (Count 2) receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(B); (Count 3) coercion and enticement, 18 U.S.C. § 2422(b); and (Counts 4 and 5) possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Dkt. 1.

After Slaughter's arrest, the government moved for pretrial detention. A detention hearing was held before United States Magistrate Judge Andrew M. Edison on January 23, 2019. Judge Edison ordered Slaughter detained pretrial and summarized his findings as follows:

> [T]he Court does not believe that [Slaughter] has introduced sufficient evidence to rebut the presumption, and detention is ordered on that basis. However, out of an abundance of caution, the Court notes that even if [Slaughter] did present evidence sufficient to rebut the presumption, the Court finds by clear and convincing evidence that no

1

combination of conditions can reasonably assure the safety of the community [i]f [Slaughter] were released. The testimony at the hearing revealed that [Slaughter] engaged in exchanging child pornography, participating in relationships with minors[,] and making threats to at least one victim. The risk of this happening again is significant, given [Slaughter's] repeated incidents in the past. It also concerns the Court that two minors live in [his mother's home,] where he would reside if let out prior to trial.

Dkt. 8 at 3.

Before the court is Slaughter's emergency motion for reconsideration of the court's order of detention pending trial.[1] Dkt. 33. He seeks temporary release, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142(i), based on the possibility of a COVID-19 outbreak within the detention center in which he is being held, and the facility's alleged inability to protect him from contracting the virus. The court finds that the matter is suitable for determination without a hearing[2] and, for the reasons explained below, denies Slaughter's motion.

## I. Legal Standard

The court may temporarily release a detained defendant to the custody of an "appropriate person, to the extent that [the court] determines such release to be

---

[1] Neither party identified why they filed their briefs under seal. *See* Dkts. 33 and 34. The court has ensured this opinion avoids discussion of confidential matters and addresses legal issues of general applicability to similar application for temporary release. Therefore, this memorandum opinion and order is not sealed.

[2] Slaughter has requested a hearing on his motion. Pursuant to Special Order H-2020-6, judges in the Galveston and Houston Divisions of the Southern District of Texas have complete discretion to conduct hearings in light of the COVID-19 pandemic. The court finds that a hearing is not necessary and denies Slaughter's request. *See, e.g., United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (recognizing the Bail Reform Act is silent about whether the defendant is entitled to hearing after a detention order has issued and declining to grant one in an "endeavor to comply with the federal and State recommendations about avoiding bringing people together in groups larger than ten persons, as well as rule expeditiously").

necessary for the preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Most courts addressing a motion for temporary release under 18 U.S.C. § 3142(i) have done so under the first prong—whether release is necessary for the defendant to assist with the preparation of his or her defense.[3] Slaughter, however, does not argue that temporary release is necessary for the preparation of his defense. *See* Dkt. 33 at 5. Instead, Slaughter argues temporary release is "necessary . . . for another compelling reason"—because he faces an increased risk of contracting COVID-19 if he remains in custody. *See id.*

There is limited authority as to when temporary release is justified under § 3142(i) based on "another compelling reason." Courts, however, have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injury." *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (summarizing cases); *see, e.g., United States v. Scarpa,*

---

[3] *See, e.g., Buswell*, 2013 WL 210899, at *5; *United States v. Dupree*, 833 F. Supp. 2d 241, 247 (E.D.N.Y. 2011); *U.S. v. Jeffries*, No. 3:10-CR-100, 2011 WL 182867, at *4 (E.D. Tenn. Jan. 20, 2011); *United States v. Hazelwood*, No. 1:10 CR 150, 2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011); *United States v. Petters*, No. CR. 08-364(RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009); *United States v. Birbragher*, No. 07-CR-1023-LRR, 2008 WL 2246913, at *1 (N.D. Iowa May 29, 2008).

815 F. Supp. 88 (E.D.N.Y. 1993), *supplemented* (Mar. 5, 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities).

This court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the serious health risks it presents, but a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Instead, the court must make an individualized determination as to whether Slaughter's COVID-19 concerns present such a compelling reason *in his case* that temporary release is necessary under § 3142(i).

United States Magistrate Judge Angel D. Mitchell recently addressed this very issue in *United States v. Clark,* No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020). In her well-reasoned opinion, Judge Mitchell considered four factors to determine whether the defendant met his burden to show a "compelling reason" for temporary release: (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *Id.* at *3.

This court adopts Judge Mitchell's four-factor analysis. *E.g., United States v. Khalil Demar Dodd,* No. 20-CR-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (adopting *Clark's* four-factor analysis in denying a defendant's request for temporary release under § 3142(i)). The court will not necessarily weigh

these factors equally but will consider them as a whole to help guide its determination as to whether a "compelling reason" exists such that temporary release is "necessary." *E.g., Clark*, 2020 WL 1446895, at *3.

## II. Legal Analysis

### A. The Original Grounds for Slaughter's Pretrial Detention

The court first considers the original grounds for the defendant's pretrial detention. *See Hamilton*, 2020 WL 1323036, at *1–2 (first considering the rebuttable presumption under § 3142(e) before considering whether the COVID-19 pandemic warranted temporary release under § 3142(i)); *Buswell*, 2013 WL 210899, at *5 (observing that "the facts surrounding the underlying reasons for the defendant's detention are relevant to the [§ 3142(i)] analysis"); *see also Dupree*, 833 F. Supp. 2d at 247 (considering the circumstances leading to the defendant's revocation of pretrial release in deciding whether temporary release was warranted under § 3142(i)).

Because Slaughter is charged with an offense involving a minor victim under 18 U.S.C. §§ 2251, 2252A(a)(2), and 2242, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance or the safety of another person in the community. Where the presumption of detention attaches, the "defendant bears a limited burden of production—not a burden of persuasion—to rebut the presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

5

Notwithstanding this limited burden, at his initial pretrial detention hearing, Judge Edison found—correctly so—that Slaughter did not present sufficient evidence to rebut this presumption. *See* Dkt. 8. Nevertheless, in his motion for reconsideration, Slaughter argues that his "longstanding ties to the locality in which he faces trial" rebuts the presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community contained in 18 U.S.C. § 3142(e). Dkt. 33 at 2 (citing *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988)).

Slaughter's argument is not new—Judge Edison already considered and rejected it at his initial pretrial detention hearing. But, out of an abundance of caution, the court briefly addresses whether Slaughter's ties to the community rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if he were released. 18 U.S.C. § 3142(e); *see United States v. Latigo*, 613 F. App'x 424, 425 (5th Cir. 2015) (remanding to district court for the limited purpose of obtaining written reasons why the court denied the defendant's motion to revoke the order of detention).

To begin, *Jackson* only presents a fragment of the law. Indeed, while the Fifth Circuit did hold that "where a defendant has presented credible evidence of his longstanding ties to the locality in which he faces trial . . . the presumption contained in § 3142(e) has been rebutted," shortly after *Jackson*, the Court clarified: "that presumption is not a mere 'bursting bubble' that totally disappears

from the judge's consideration after the defendant comes forward with some evidence." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

In resolving the issue of release or detention, in addition to 18 U.S.C. § 3142(e)'s rebuttable presumption, courts consider the following statutorily prescribed factors: (1) The nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release. 18 U.S.C. § 1342(g)(1)–(4). The court addresses each factor in turn, below.

*First,* without question, the offenses with which Slaughter is charged are serious in nature and involve circumstances that endanger the community.[4]

---

[4] *See, e.g., United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (observing that Congress has made clear its "view that child pornography crimes are serious offenses" (internal brackets and quotation marks omitted)); *United States v. Goff*, 501 F.3d 250, 258–59 (3d Cir. 2007) (ruling that "[c]hildren are exploited, molested, and raped" and thus suffer "injuries and the taking of their innocence" due to the market for child pornography and rejecting defendant's effort "to downplay the nature and seriousness of his crime . . . [by] implying that his was a victimless crime because viewing the pornography was 'a solitary, private activity of short duration driven by [his] curiosity'"); *United States v. Fitzpatrick*, 44 Fed. App'x 653 (5th Cir. 2002) ("[P]ossession of child pornography [is] a 'crime of violence' within the meaning of 18 U.S.C. § 3142(f)."); *United States v. Church*, 701 F. Supp. 2d 814, 820–22 (W.D. Va. 2010) (cataloging grievous harms caused by child-pornography offenses); *United States v. Crisman*, No. CR 11-2281 JB, 2011 WL 5822731, at *16 (D.N.M. Nov. 15, 2011) (finding that a defendant charged with distribution and possession of child pornography using file-sharing software was charged with a crime of violence, despite the fact that there were "no allegations that [the defendant] engaged in illicit physical contact with a minor, or that he directly solicited a minor"); *see also United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); 18 U.S.C. §§ 2252A(b)(1) (providing for imprisonment of not less than five years and up to twenty years for violation of § 2252A(a)(2)(A)), 3142(g)(1) (identifying question of "whether the offense is a crime of violence . . . or involves a minor victim" as among important factors in its assessment of the nature and circumstances of the offense), 3156(a)(4)(C) (defining "crime of violence" as used in 18 U.S.C. § 3142 as including offenses under 18 U.S.C. § 2252A).

7

*Second*, the weight of the evidence proffered against Slaughter strongly opposes temporary release. *See United States v. Davin*, No. 12-10141-EFM, 2012 WL 2359419, at *3 (D. Kan. June 20, 2012) ("After all, child pornography is nothing more than pictorial evidence of crimes against children. Therefore, [this] factor weighs in favor of detention."). In addition to evidence that Slaughter possessed child pornography, at the January 2019 detention hearing, the government presented evidence—elicited via testimony from Special Agent for Homeland Security Investigations Dewayne Lewis—that Slaughter coerced a minor to create and produce multiple sex videos and send them to Slaughter. If the minor refused, Slaughter threatened to send nude photographs of the minor that he had already received from the minor to the minor's school friends.[5]

*Third*, while Slaughter does not have a criminal history, he admitted to Special Agent Lewis that he engaged in inappropriate sexual conduct with a minor (*i.e.,* received photographs that constitute "child pornography" from an underage female victim).[6] This is not a full recitation of the government's evidence; the court refers to this one example simply to show that Slaughter's history and characteristics favor pretrial detention.

*Fourth*, pretrial release poses a significant danger to the community. Slaughter is charged not only with possession of child pornography, but sexual

---

[5] A transcript of the January 2019 detention hearing is not available at this time. However, the court has reviewed an audio recording of the hearing. The portion of Special Agent Lewis' above-cited testimony begins at 2:46:19 p.m.

[6] Special Agent Lewis' above-cited testimony begins at 2:42:10 p.m.

8

exploitation of a minor (Count 1) and coercion and enticement of a minor (Count 3). 18 U.S.C. §§ 2422(b), 2251(a) and (e).

Simply put, Slaughter is a high-risk defendant; the need for pretrial detention is not a close call.

### B. The Specificity of Slaughter's Stated COVID-19 Concerns

Slaughter does not raise any legitimate concerns about *his* underlying health conditions. Rather, he just generally claims pretrial detention puts him at an increased risk of contracting COVID-19. And while Slaughter does cite certain precautions taken by the City of Houston, none of these precautions relate to detention facilities. At best, this argument is general and speculative. That said, the court is not blind—home confinement will not expose Slaughter to the regular cycle of prisoners, prison staff, visitors, etc.

But the government has presented evidence that, as of March 30, 2020, no inmate or staff member at the Federal Detention Center in Houston ("FDC Houston")—where Slaughter currently resides—has tested positive or exhibited symptoms associated with COVID-19. Dkt. 34 at 2. Further, FDC Houston has implemented the following preventative procedures: (1) upon intake, every inmate's vital signs and temperature are taken; (2) every inmate has completed a "Coronavirus Questionnaire" supplied by the Center for Disease Control; (3) inmates are monitored for COVID-19 symptoms; (4) inmates who travel to a courthouse are quarantined for 14 days upon return and then evaluated before being introduced back into the general prison population; (5) FDC Houston has

9

implemented a policy to quarantine and isolate any inmate that tests positive for COVID-19, including the use of negative-air-pressure cells; (6) for 14 days following any positive test, medical staff will monitor and maintain quarantine and isolation before reevaluating the prisoner to determine whether he or she is eligible for reintroduction; and (7) FDC Houston has canceled all contact visits at the facility. *Id.*

Without question, avoiding crowds and social distancing are recommended to reduce the risk of transmission.[7] But an assertion that there is a public good in the release of as many prisoners as possible to avoid the spread of the pandemic is an argument for the release of all detainees. *See United States v. Fitzgerald*, No. 217CR00295JCMNJK, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020) ("[The defendant argues] that he faces an increased risk of contracting COVID-19 if he remains in custody. . . . [The d]efendant's argument, however, applies equally . . . to every detainee in detention[.] [T]he Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee. Therefore, the Court finds Defendant's COVID-19 argument unpersuasive.") (footnotes omitted).

---

[7] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html (last visited Mar. 31, 2020) (setting forth steps to reduce the risk of transmission); THE PRESIDENT'S CORONAVIRUS GUIDELINES FOR AMERICA: 15 DAYS TO SLOW THE SPREAD, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last visited Mar. 31, 2020) (recommending avoiding social gatherings of ten or more people).

Slaughter's argument that he is exposed to an increased risk of contracting COVID-19 if he were to remain incarcerated is purely speculative; his circumstances are not unique, but rather generalized to all individuals in the prison system. Slaughter cannot predict the extent to which COVID-19 cases might arise at the facility any more than many Americans can predict how they might be exposed to the virus. And while inmates may not be able to fully adhere to optimal social-distancing guidelines, FDC Houston has implemented a comprehensive plan in the event an inmate tests positive for COVID-19.

As with the first factor, *Clark's* second factor weighs strongly in favor of pretrial detention.

### C. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate Slaughter's Overall COVID-19 Risks

The Bail Reform Act allows for temporary release only if the court determines that such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. Thus, the court evaluates the extent to which the proposed release plan is tailored to mitigate or exacerbate the defendant's overall COVID-19 risks.

Slaughter asks the court to order him confined to his mother's residence, or, in the alternative, his grandmother's residence. Dkt. 33 at 2. Slaughter also proposes the court order 24/7 electronic monitoring as part of the conditions of

his release, in addition to "all other conditions of release sought by the Government and/or imposed by the Court." *Id.* There is no evidence in the record that either Slaughter's mother or grandmother consent to this responsibility. Assuming they do, this factor, at best, only slightly favors temporary release.

Slaughter does not address the extent to which his risks could be mitigated if he is ordered detained at his mother's or grandmother's home. For example, he does not explain who else has resided or will reside in or frequent the home(s) or identify any screening practice or concrete COVID-19 precautions being taken there. And while the court freely concedes that inmates may not be able to fully adhere to optimal social-distancing guidelines, Slaughter offers nothing more than speculation that home detention would be less risky than remaining in detention. *See Buswell*, 2013 WL 210899, at *5 (holding that a defendant bears the burden of establishing circumstances warranting temporary release under 18 U.S.C. § 3142(i)). At best, the court is persuaded that this factor only slightly favors temporary release.

### D. The Likelihood that Slaughter's Proposed Release Plan Would Increase COVID-19 Risks to Others

In considering temporary release under 18 U.S.C. § 3142(i) based on circumstances related to COVID-19, it is also appropriate to consider the likelihood that the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release. *See Clark*, 2020 WL 1446895, at *7.

The government contends that Slaughter is safer at FDC Houston, "where no known instances of the virus are present," than in public, "where the risk of contracting the virus is arguably higher." Dkt. 34 at 12. This is a double-edged sword; while the lack of any confirmed COVID-19 cases at FDC Houston weighs strongly in favor of pretrial detention under the second prong, it cannot then be argued that Slaughter's proposed release plan—home confinement—would increase COVID-19 risks to others (assuming he complies with any conditions of release).[8] Accordingly, the court finds that the fourth *Clark* factor favors temporary release.

## III. Conclusion

On balance, Slaughter has not come close to showing that a "compelling reason" reason exists such that temporary release is "necessary." 18 U.S.C. § 3142(i). Even if the court assumes that Slaughter has rebutted the statutory presumption of detention—which the court finds that he has not—the court concludes nonetheless that the record establishes by clear and convincing evidence that no available release conditions reasonably would assure the safety of the community.[9]

---

[8] *See Clark*, 2020 WL 1446895, at *7 ("A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.")

[9] *See United States v. Hurwitz*, No. CR 116-078, 2016 WL 5952744, at *3 (S.D. Ga. Oct. 13, 2016) ("While no evidence was introduced of past criminal convictions, evidence was introduced that [the charged d]efendant's conduct was not an isolated event. . . . [He] is capable of engaging in the same or similar conduct from nearly any internet-enabled device[,] and it would be nearly

13

***

Slaughter's position, while regrettable, is of his own making. While the court does not discount Slaughter's concerns about COVID-19, or the daily-changing dynamics related to the current pandemic, the court finds that Slaughter has not shown how those dynamics justify his temporary release. A defendant is not entitled to temporary release under 18 U.S.C. § 3142(i) based on generalized COVID-19 fears and speculation.

Accordingly, Slaughter's motion to reconsider the court's order of detention due to changed circumstances is **DENIED**.

SIGNED on Galveston Island on this, the  6th  day of April, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

impossible to prevent [his] unmonitored access to such outlets in an age of ubiquitous internet access and inexpensive computing technology."); *United States v. Wilson*, 217 F. Supp. 3d 165, 175 n.5 (D.D.C. 2016) (observing that, regardless of conditions, the charged defendant "would likely still find a way to access the Internet."); *United States v. Reiner*, 468 F. Supp. 2d 393, 397 (E.D.N.Y. 2006) ("[T]he issue is not only [the] defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography . . .") *see also Clark*, 2020 WL 1446895, at *3 ("[S]upervising such a high-risk offender out in the community will place pretrial services officers at heightened risk of contracting the virus. '[L]ocation monitoring is not a limitless resource, nor is its installation and monitoring by the United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding [the] implementation of social distancing.'" (citation omitted)); *United States v. Jackson*, No. CR 18-216, 2020 WL 1445958, at *2 (W.D. Pa. Mar. 24, 2020) ("I also must keep in mind the substantial burden that releasing [this defendant] and similarly-situated defendants would place on the U.S. Probation Office at a time when conditions already are not conducive to such monitoring.").